IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EGLI | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| STRIMEL, et al. | : | NO. 14-6204 |

**MEMORANDUM**

**L. Felipe Restrepo, U.S. District Judge**                                                **August 28, 2015**

*Pro se* Plaintiff Christopher Egli ("Plaintiff") brings this action against a local public access cable television station Radnor Studio 21, based in Radnor Township, Pennsylvania, and several other defendants Plaintiff alleges are associated with the station.  Plaintiff claims a violation of his First Amendment rights and a violation of the Cable Communications Policy Act of 1984.  Plaintiff also asserts various state law claims.  Defendants now move for dismissal of Plaintiff's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, all claims except Plaintiff's claim for a violation of his First Amendment rights, which Plaintiff brings pursuant to 42 U.S.C. § 1983, are dismissed.[1]

---

[1] Defendant Verizon Communications, Inc. ("Verizon") also moves for dismissal under Fed. R. Civ. P. 12(b)(5) for insufficient service of process, and argues that Plaintiff failed to effectuate service on Verizon that conforms to Fed. R. Civ. P. 4(h)(1).  Plaintiff conveyed to the Court, by letter dated November 7, 2014 (ECF Document No. 3), that he sent a copy of the Complaint to Verizon by first class mail.  Plaintiff did not indicate that his mailing required proof of receipt by Verizon or an authorized agent or that his mailing included two copies of a statement of service by mail and an acknowledgment of receipt.  Thus Plaintiff has failed to establish that his mailing conformed to Pennsylvania rules, which generally require personal service of original process on a corporation and require any service by mail to include "a receipt signed by the defendant or his authorized agent," Pa. R. Civ. P. 403, 424, or to the rules of New York, where Verizon was served, N.Y. C.P.L.R. § 312-a.  Therefore, it appears that dismissal for insufficient service on Verizon is appropriate under Fed. R. Civ. P. 4 and 12(b)(5).  Nevertheless, as explained *infra*, Plaintiff's claims against Verizon also must be dismissed pursuant to Rule 12(b)(6).

1

**I.     BACKGROUND**

Plaintiff's allegations center on the decision of Defendant Radnor Studio 21 ("RS21"), which is Defendant Radnor Township's public access cable television station, and its general manager Defendant George Strimel ("Strimel") to "block[]" films created by Plaintiff from airing on RS21." Compl. (ECF Document No. 1) 3.[2] Plaintiff alleges that in early 2014, two films he submitted to RS21 were subject to "lengthy delays" before airing. *Id.* A third film named "Dog" was, according to Plaintiff, "delayed for months" before it was ultimately rejected by the studio. *Id.* Plaintiff avers that after submitting his films to RS21, Strimel "simply held [them] in hand and ended all communications" with Plaintiff. *Id.* When Plaintiff asked Strimel in October 2014 why his films were being blocked, Strimel responded that he did not know. *Id.* at 4.

Plaintiff also alleges that RS21, Radnor Township, and Verizon are signatories to a Franchise Agreement, which sets forth the terms and conditions by which RS21 operates. *Id.* at 1. Under the Franchise Agreement, 80 percent of the money paid to RS21 is to be used "to further the purposes of public access." *Id.* at 10. This money, according to Plaintiff, has not been accounted for and "precious little has been spent to support producers and filmmakers." *Id.* at 11.

In Count I of his Complaint, Plaintiff claims a denial of his First Amendment rights, pursuant to 42 U.S.C. § 1983, and a violation of 47 U.S.C. § 531(e), against RS21 and Strimel. *Id.* at 4-6. Plaintiff also alleges state law claims against all Defendants for breach of the

---

[2] Plaintiff has not properly pled his claims in numbered paragraphs as required by Fed. R. Civ. P. 10(b). In keeping with the liberal pleading standard afforded to *pro se* litigants, the Court has considered Plaintiff's Complaint in its entirety and will cite ECF page numbers of the Complaint.

2

Franchise Agreement (Count II), fraud (Count III), civil conspiracy (Count IV), and tortious interference (Count V).³  *See generally id*.

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  The Court "need not accept as true unsupported conclusions and unwarranted inferences."  *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citation and internal quotations omitted).  But importantly, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," and should be "liberally construed."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *cf.* Fed. R. Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice.").

## III. DISCUSSION

### a. 47 U.S.C. § 531(e)

Although not listed among the numbered counts in Plaintiff's Complaint, Plaintiff appears to allege within Count I that Strimel and RS21 violated his rights under the Cable Communications Policy Act of 1984, specifically 47 U.S.C. § 531(e), because they did not air his films.⁴  *See* Compl. 2-4.  Section 531(e) prohibits "cable operators" from exercising editorial

---

³ Plaintiff withdrew Count VI for intentional infliction of emotional distress in his response to Defendants' motions to dismiss.  *See* Pl.'s Opp. Br. (Doc. 9) 25.
⁴ Plaintiff's Complaint also contains language from 47 U.S.C. § 532(c)(2). However, this Section pertains to "cable channels for commercial use," also called "leased access" channels.  The parties agree

control over "any public, educational, or governmental use of channel capacity." 47 U.S.C. § 531(e). Strimel and RS21 argue that they are not "cable operators," as defined by the statute and, therefore, Plaintiff's claim against them should be dismissed. Defs.' Br. (Doc. 4-2) 5-7.

The statute defines a "cable operator" as "any person or group of persons . . . who controls or is responsible for . . . the management and operation of [] a cable system." 47 U.S.C. § 522(5). A "cable system" is defined as "a facility, consisting of a set of closed transmission paths and associated signal generation, reception, and control equipment that is designed to provide cable service which includes video programming and which is provided to multiple subscribers within a community." 47 U.S.C. § 522(7). "Cable service" is the one-way transmission to subscribers of video programming or other programming service and the subscriber interaction required to select that programming. 47 U.S.C. § 522(6).

Plaintiff does not allege facts anywhere in his Complaint that either Strimel or RS21 is, in fact, a "cable operator" or even an entity that operates a "cable system." Nor does Plaintiff allege that RS21 "transmits" programming to "subscribers." Rather, Plaintiff succinctly describes RS21 in his Complaint as a "Public Access TV station" and describes Strimel as the "General Manager" of that station. Compl. 1. Courts have routinely interpreted the term "cable operator" under the statute to apply to cable companies such as Verizon, Comcast, and Time-Warner, rather than individual television stations like RS21 or station managers. *See, e.g.*, *Nat. Cable & Telecomm. Ass'n v. F.C.C.*, 567 F.3d 659, 661 (D.C. Cir. 2009) ("'Cable operators' are just companies that deliver video programming by cable, like Comcast and Time-Warner.") And here, as Strimel and RS21 suggest, Verizon appears to be the entity properly considered a "cable

---

in their briefing that RS21 is a "cable channel[] for public, educational, or governmental use," also called a "PEG" or "public access" channel, to which 47 U.S.C. § 531 applies. 47 U.S.C. § 531; *see also Denver Area Educ. Telecomm. Consortium*, *Inc.*, 518 U.S. 727, 734-35 (1996) (defining and distinguishing leased access channels and PEG channels).

operator." Accordingly, to the extent that Plaintiff has asserted a claim under 47 U.S.C. § 531(e), Strimel and RS21's motion to dismiss this claim is granted.[5]

### b. 42 U.S.C. § 1983

Plaintiff brings in Count I a claim under 42 U.S.C. § 1983, against Strimel and RS21, for violation of his First Amendment rights. To state a claim pursuant to 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution . . . and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff alleges that Strimel and RS21 are state actors and that they violated his First Amendment rights when they "blocked" Plaintiff's films from being aired on RS21, beginning in 2014. Compl. 3-5. Strimel and RS21 argue that Count I must fail because: (1) they are not state actors; (2) *Arkansas Educational Television Commission v. Forbes*, 523 U.S. 666 (1998) permits public television broadcasters to select and reject broadcast content at their discretion and therefore, there has been no violation of Plaintiff's First Amendment rights. Defs.' Br. (Doc. 4-2) 7-13. Plaintiff disagrees.

As cases cited by Defendants acknowledge, determining whether a private actor can be considered a state actor is a "'fact-bound inquiry.'" *See, e.g.*, *Hebrew v. Houston Media Source, Inc.*, 2010 WL 2944439, at *4 (S.D. Tx. July 20, 2010) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) and deciding state actor question on summary judgment). It is plausible, based on the allegations of the Complaint, that discovery could reveal a relationship between RS21, Strimel, and the Township sufficient to deem RS21 and Strimel "state actors" for purposes

---

[5] Even if RS21 and Strimel could be deemed "cable operators" under the statute, Plaintiff's claim under 47 U.S.C. § 531(e) would fail because Section 531(e) does not provide for a private right of action to enforce violations. *Egli v. Comcast of Pennsylvania*, 2004 WL 2166301, at *1 n.1 (E.D. Pa. Sept. 22, 2004) (examining 47 U.S.C. § 531(e) and deciding this section does not convey a private right of action, resulting in the dismissal of Plaintiff's claim); *see also Leach v. Mediacom*, 240 F. Supp. 2d 994, 999 (D. Iowa 2003), *aff'd*, *Leach v. Mediacom*, 373 F.3d 895, 896 (8th Cir. 2004).

of Plaintiff's Section 1983 claim.  Taking the allegations in the Complaint as true, viewing the facts in the light most favorable to Plaintiff, and construing the *pro se* Complaint liberally, the Court cannot definitively conclude that Strimel and RS21 were not "state actors."  Defendants may reassert this argument on a motion for summary judgment, after the parties have conducted discovery to address the issue.[6]

Further, the Court cannot conclude at this stage that Plaintiff has failed to state a violation of his First Amendment rights.  Defendants argue that *Forbes* bars Plaintiff's First Amendment claim.  In *Forbes,* the Supreme Court abandoned the "mechanical" application of the traditional First Amendment "public forum doctrine" to the public television context and stated that "[p]ublic and private broadcasters alike are not only permitted, but indeed required, to exercise substantial editorial discretion in the selection and presentation of their programming." *Forbes*, 523 U.S. at 672-73.  Significantly, as Plaintiff points out in his opposition brief, *Forbes* addressed the rights of a state-owned public television broadcaster to exercise such editorial discretion.  Pl.'s Br. 9; *see also id.* at 669 (describing the defendant/petitioner as a "state agency owning and operating a network of five noncommercial television stations").  *Forbes* did not specifically address public *access* television.

Plaintiff argues that public access television differs from public broadcast television, because the former was "created as a forum for members of the public in local communities" and it is regulated by a different set of rules than public broadcast television.  Pl.'s Opp. Br. (Doc. 9) 9.  Therefore, according to Plaintiff, *Forbes* is inapplicable.  *See id.*  Strimel and RS21 do not address Plaintiff's argument or provide support for the proposition that courts should equate

---

[6]  Defendants Strimel and RS21 attach to their reply brief an affidavit signed by Strimel, attesting to the relationship between Radnor Township and RS21.  Defs.' Reply (Doc. 13), Ex. A.  However, the Court cannot properly consider evidence of this nature on a Rule 12(b)(6) motion to dismiss.  *See* Fed. R. Civ. P. 12(d); *see also Rose v. Bartle*, 871 F.2d 331, 340-41 (3d Cir. 1989) (requiring conversion of a motion to dismiss to a motion for summary judgment in order to consider an affidavit).

public *access* television with public *broadcast* television for purposes of First Amendment analyses.  Rather, these Defendants simply urge this Court to hold that *Forbes* operates as a bar to all First Amendment claims in the public access channel context.[7]

Whether courts should apply the traditional First Amendment "forum analysis" to public access channels at all, or what type of forum courts should deem public access channels to be, remains a complex question after the Supreme Court decisions in *Denver Area Educ. Telecomm. Consortium*, *Inc.*, 518 U.S. 727 (1996), which addressed public access channels specifically, and after *Forbes*.  Nevertheless, courts addressing First Amendment challenges after *Forbes* have not interpreted *Forbes* to command the same "substantial editorial discretion" in the public access channel context that the Supreme Court noted in *Forbes* was "required" in the public broadcasting context.  *See, e.g.*, *Horton v. City of Houston,* 179 F.3d 188 (5th Cir. 1999); *Rhames v. City of Biddeford*, 204 F. Supp. 2d 45 (D. Maine 2002); *Demarest v. Athol/Orange Comm. Television, Inc.*, 188 F. Supp. 2d 82 (D. Mass. 2002); *Jersawitz v. People TV*, 71 F. Supp. 2d 1330, 1341-42 (N.D. Ga. 1999).  Instead, courts have interpreted Supreme Court precedent to, at the very least, have "made clear that the First Amendment *does* protect the right to free expression on . . . public access cable channels." *Rhames*, 204 F. Supp. 2d at 50; *see also Demarest*, 188 F. Supp. 2d at 93 (noting that six Justices of the Supreme Court agreed in *Denver Area* that "heightened scrutiny" applies to a restriction in the public access channel context and that "individual public forum cases provide useful analogies when analyzing First Amendment challenges to restrictions on PEG channels"); *Jersawitz*, 71 F. Supp. 2d at 1341 (holding that the public access channel at issue was a designated public forum "available to anyone whose videotape meets the technical and content requirements established by [the station] and the City).

---

[7]  Strimel and RS21 acknowledge that the Supreme Court in *Forbes* carved out a special exception for political candidate debates.  Defs.' Br. (Doc. 4-2) 11.

In the absence of authority applying *Forbes* to bar claims in the public access channel context, this Court declines to adopt the position set forth by Strimel and RS21 on this issue. Strimel and RS21's motion to dismiss Plaintiff's Section 1983 claim is denied.

### c. Breach of contract

In Count II, Plaintiff alleges that RS21, Radnor Township, and Verizon breached the Franchise Agreement by failing to provide editing equipment and studio space to residents and by "redirect[ing]" RS21 funds "elsewhere." *See* Compl. 6-12. Under Pennsylvania law, "[t]o state a breach of contract claim, a plaintiff must aver facts sufficient to support a reasonable inference of (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *McLaren v. AIG Domestic Claims, Inc.*, 853 F. Supp. 2d 499, 512-13 (E.D. Pa. 2012).

As an initial matter, Plaintiff's breach of contract claims against Verizon, RS21, and Strimel fail as a matter of law, because these Defendants are neither parties nor signatories to the Franchise Agreement and therefore, they cannot be held liable for any alleged breach of contract. *KDH Elec. Sys., Inc. v. Curtis Tech. Ltd.*, 826 F. Supp. 2d 782, 794 (E.D. Pa. 2011) (citing *Electron Energy Corp. v. Short*, 597 A.2d 175, 177 (Pa. Super. Ct. 1991)), *aff'd* 618 A.2d 395 (Pa. 1993); Defs.' Mot. Dismiss (Doc. 4), Ex. A (hereinafter "Franchise Agreement").[8] Radnor Township is the *only* named Defendant in this lawsuit that is also a party to the Agreement.[9] *See*

---

[8]   Because Plaintiff cites directly to the Franchise Agreement in his Complaint and references the Agreement as the basis for several of his claims, *see, e.g.*, Compl. 4, 6, 7, the Court may consider the Agreement itself, attached as an exhibit to Defendants' motions (Docs. 4-3, 5-4), at this stage. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (stating that a district court may consider undisputedly authentic documents if the complainant's claims are based on these documents, reasoning that "[w]hen a complaint relies on a document…the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished"). Plaintiff does not appear to dispute the authenticity of the Franchise Agreement.

[9]   Verizon Pennsylvania, Inc. is a party to the Franchise Agreement, but Verizon Communications, Inc. is the named Defendant here.

*generally* Franchise Agreement. Plaintiff may only recover from Radnor Township for breach of contract, however, if he was an intended third-party beneficiary of the Agreement, since Plaintiff himself is neither a party nor signatory to the agreement. *See id.*

Under Pennsylvania law, a third party has standing to recover on a contract only where "both contracting parties [] have expressed an intention that the third party be a beneficiary and that intention . . . affirmatively appear[s] in the contract itself." *Halstead v. Motorcycle Safety Found., Inc.*, 71 F. Supp. 2d 455, 460 (E.D. Pa. 1999) (citing *Scarpitti v. Weborg*, 609 A.2d 147, 149 (Pa. 1992)). "In the absence of some statutory, common law, or equitable duty, the parties to an agreement simply have no obligation to a nonparty, regardless of the extent to which that nonparty is interested in enforcement or abrogation of the contract." *Id.* The Court finds no express intention in the Agreement to benefit Plaintiff or individuals in Plaintiff's position.[10] Accordingly, Plaintiff's claim for breach of contract against Radnor Township also fails as a matter of law and Count II is dismissed.

### d. Intentional tort claims

Turning to Plaintiff's intentional tort claims for fraud, civil conspiracy, and tortious interference, the Court first notes that Defendant Radnor Township is a local agency that is immune from intentional tort claims pursuant to the Pennsylvania Political Subdivision Tort Claims Act ("the Tort Claims Act").[11] *See* 42 Pa. Cons. Stat. § 8541, *et. seq.* Accordingly,

---

[10] Even if the Franchise Agreement could be construed to grant third-party beneficiary status to Radnor Township residents, "residents of the franchise area," Plaintiff resides in Devon, Pennsylvania, which is not located within Radnor Township. *See* Franchise Agreement §§ 1.14, 1.27; Compl. 1-2.

[11] While the Tort Claims Act lists several exceptions to local agency immunity, those exceptions pertain only to *negligent* acts. *See* 42 Pa.C.S.A § 8542. Courts in this Circuit have repeatedly applied the Tort Claims Act to grant immunity from *intentional* torts claims to local government agencies. *See, e.g.*, *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 644-46 (E.D. Pa. 2014) (stating "the Tort Claims Act extends immunity to a municipality for intentional torts" and dismissing several intentional tort claims); *Hankin Family P'ship v. Upper Merion Twp.*, 2012 WL 43599, at *14 (E.D. Pa. Jan. 6, 2012)

9

Plaintiff's intentional tort claims for fraud, civil conspiracy and tortious interference against Radnor Township will be dismissed.[12]

### *(1) Fraud*

To withstand a Rule 12(b)(6) motion to dismiss a fraud claim brought under Pennsylvania law, a plaintiff must allege: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; as well as (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Hart v. Arnold*, 884 A.2d 316, 339 n.7 (Pa. Super. Ct. 2005). Fraud claims brought in federal court are also subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this standard, a plaintiff "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

Plaintiff's fraud claim (Count III) is devoid of such precision; he alleges only that it is "likely" that little of the money designated for RS21 was actually spent there, and that he believes that "precious little has been spent to support producers and filmmakers," but that "neither the Plaintiff nor the public can know the exact amount of money unaccounted for, nor where this money has gone." Compl. 11. Plaintiff further alleges that "Strimel, Radnor Township, and Verizon are engaging in a plan to defraud Radnor area taxpayers indefinitely,

---

(noting that the plaintiff was barred from bringing a civil conspiracy claim against township defendants under the Tort Claims Act).

[12] Even in the absence of governmental immunity, Plaintiff's claims against Defendant Radnor Township would be dismissed on other grounds, as explained below.

using RS21 for their personal gain," and that "all three are operating this shell game to defraud the public." *Id.* at 12. Without further detail to add "some measure of substantiation" to his allegations, Plaintiff has failed to plead fraud with the particularity that the law requires to sustain his claim. Plaintiff's fraud allegations, as pleaded in the Complaint, amount to little more than conjecture. Accordingly, Plaintiff's fraud claim against each Defendant is dismissed.

*(2) Civil conspiracy*

Plaintiff's claim for civil conspiracy (Count IV) fails on similar grounds. To state a cause of action for civil conspiracy under Pennsylvania law, a plaintiff must allege: "'(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage.'" *Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 262 (3d Cir. 2004) (quoting *McGuire v. Shubert*, 722 A.2d 1087, 1092 (Pa. Super. Ct. 1998)). To adequately plead civil conspiracy, a "plaintiff must make specific factual allegations of a combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events." *Kost v. Dep't of Pub. Welfare of Pa.*, 2009 WL 466166, *4 (E.D. Pa. Feb. 24, 2009) (citation and internal quotations omitted); *see also Reed v. Harpster*, 506 F. App'x 109, 111 (3d Cir. 2012) (stating "allegations of conspiracy must be grounded firmly in facts; they cannot be conclusory nor can they hinge on bare suspicions and foundationless speculation" and dismissing conspiracy claim where allegations did not contain the conduct, time, or place that constituted the conspiracy); *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (affirming district court's dismissal of conspiracy claims based on mere suspicion and speculation).

As noted above, Plaintiff alleges generally that "Strimel, Radnor Township, and Verizon are engaging in a plan to defraud Radnor area taxpayers indefinitely, using RS21 for their personal gain," and that "all three are operating this shell game to defraud the public." Compl. 12. These broad and conclusory allegations simply lack the factual support necessary to state a claim for civil conspiracy. Count IV is dismissed against all Defendants.

### (3) Tortious interference

Under Pennsylvania law, a cause of action for tortious interference with contractual relations consists of the following elements:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc*., 357 F.3d 375, 384 (3d Cir. 2004). Plaintiff's tortious interference claim (Count V) is premised on his belief that the Defendants are ignoring the terms of the Franchise Agreement. Compl. 12. But as previously discussed, Plaintiff is not a party to the Franchise Agreement, nor a third-party beneficiary. Therefore, Plaintiff's claim fails to satisfy even the first element of a tortious interference claim, and this claim must be dismissed against all Defendants.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions are granted as to all claims, except Plaintiff's claim pursuant to 42 U.S.C. § 1983 against Defendants RS21 and Strimel. Defendants Radnor Township and Verizon Communications are dismissed from this action.

An implementing Order follows.